| JONES, Judge.
Plaintiff, New Orleans Public Service, Inc. (NOPSI), appeals the trial court’s judgment dismissing its cause of action in negligence and strict liability for damages sustained when its transformer slid off a railcar while in the process of being loaded for transport.
American Machinery Movers, (AMM), an independent contractor, was hired by NOPSI to load a large electrical transformer from a flatbed truck to a railcar owned by defendant, CSX Transportation, Inc. (CSX Transportation), (formerly the Louisville and Nashville Railroad Company). The accident occurred at the railroad’s Michoud spur track in New Orleans. The transformer was being loaded for transport to Cannonsburg, Pennsylvania on November 28, 1975. • After sliding the transformer from the truck to the railcar, the transformer slid off the railcar and fell to the ground resulting in $199,-101,00 of stipulated damages. The facts of the accident were recited by Valcour Verdun and Patrick Burns, employees of AMM and the only eyewitnesses to the accident to testify.
LMr. Verdun testified that the loading site was less than ideal. On one side the spur track abutted the highway and on the other side was a swamp. Mr. Verdun and Mr. Burns had to jack up the swamp side of the railcar above its springs to make it level and stable. Cribbing was laid in place, checked, and then 48,000 pounds of railcar was placed on it. Verdun checked the cribbing and made sure the railcar was level.
Using winch lines and steel rails, the transformer was pulled from a flatbed truck to the railcar. The transformer had come to a complete stop in its proper position, the center of gravity on the railcar. It was completely stopped for 5 to 10 minutes. Burns was unhooking one of the snaps, and the winch lines were slack, when the accident occurred.
Verdun heard three loud pops and hollered for everyone to get out of the way. After the sounds, the railcar tilted heavily towards the swamp side. The transformer, still resting on the rails used to slide it from the flatbed to the railcar, slid to the swamp side off the *1035 railcar. The railcar rocked violently, scattering the cribbing. Verdun concentrated on getting out of the way and did not do an investigation afterwards. Verdun believed that the popping sound was the cribbing moving on the rail ties, but did not know what caused the cribbing to give way.
Burns found several freshly broken ties after the accident and knew that they were broken in the accident because no dirt was in them.
Verdun noted that when the transformer was reloaded, it was reloaded by a crane at the same spot, but it was placed in the bed of the car and as soon as it was set down the railroad moved it back up the track out of the way.
Maryland Casualty Company was AMM’s insurer pursuant to an inland marine policy covering cargo from the time of pickup to delivery. Together, Maryland Casualty, AMM and NOPSI executed a loan receipt on November |322, 1977 reimbursing NOPSI $213,582.24 as a loan that would become due and owing upon recovery from any party hable for the damages and only to the extent of recovery. The $213,582.24 represents $199,010.00 in damages caused by the accident, $8,485.78 for escalation charges for repair of the subject transformer and $6,086.46 for sue and labor charges for internally securing the transformer prior to its return shipment to Pennsylvania for repair.
Approximately one year after the accident NOPSI filed suit against CSX Transportation. CSX Transportation third-partied AMM and Maryland Casualty Company.
Prior to trial CSX Transportation filed an Exception of Prescription, an Exception of No Right of Action and a Motion for Summary Judgment. The trial court denied CSX Transportation’s Exception of No Right of Action and Motion for Summary Judgment. On January 29, 1993, this Court denied writs by CSX Transportation relative to the trial court’s denial of its Motion for Summary Judgment stating:
Without benefit of a review of the bill of lading, which could show definitively whether the bill of lading was signed and lawful in all respects, whether it was in place at the time the damage occurred, and thus, that the Carmack Amendment is applicable, we find that there are material facts still in dispute such that summary judgment is precluded.
On April 20, 1994, after a bench trial on the merits, the trial court dismissed NOPSI’s cause of action finding that NOPSI’s claim was untimely under the Carmack Amendment and that even if NOPSI’s suit was timely that NOPSI failed to prove that there was a failure in the roadbed which was a proximate cause of the action.
NOPSI appeals. CSX Transportation answered the appeal reasserting the Exceptions of Prescription and No Right of Action which had been urged at trial. CSX Transportation filed its Exception of Prescription on the ground |4that NOPSI’s suit was time-barred because it failed to give any written notice of the claim for damages within nine months of the delivery of the shipment as required by contract and 49 U.S.C. Section 11707(e), the Carmack Amendment of the Interstate Commerce Act. We address this issue in our discussion of plaintiffs first assignment of error. CSX Transportation argues in its Exception of No Right of Action that NOPSI was not the real party in interest and had no standing or pecuniary interest to pursue the claim. We find no legal impediment to NOPSI’s lawsuit. The loan receipt executed by NOPSI and third-party defendants AMM and Maryland Casualty Company is legal in all respects. CSX Transportation’s Exception of No Right of Action is denied. In the alternative, CSX Transportation reasserts its third-party demand for indemnity or 100% contribution against AMM and its insurer should NOPSI prevail on appeal. Finally, in its answer to NOPSI’s appeal, CSX Transportation asserts that NOPSI’s appeal is frivolous and warrants sanctions. La.C.C.P. article 863 allows a court to impose sanctions when a party has incurred unjustified expenses due to pleadings filed in court which have been signed and certified by opposing counsel as being in good faith. Because we find that the assignments of error raised by NOPSI on appeal were raised in good faith, we decline to impose sanctions.
*1036 On September 21, 1994 CSX Transportation filed a Motion To Strike Original Brief of Plaintiff-Appellant on grounds that the brief exceeded the twenty-five (25) page limitation mandated by Rule 2-12.2 of the Uniform Rules of Louisiana Courts of Appeal and Local Rule 12 of this Court. Through an oversight this motion was not ruled upon until oral argument at which time it was denied as moot and counsel for NOPSI duly admonished.
By its first assignment of error, NOPSI argues that the trial court erred in concluding that the Carmack Amendment applies to these facts and operates lato bar NOPSI’s claim as untimely. NOPSI contends that the Carmack Amendment, 49 U.S.C. Section 11707, is inapplicable because the transformer was allegedly damaged before the bill of lading “issued” and before the shipment was “in transit.” CSX Transportation argues that NOPSI’s argument fails because 1) NOPSI judicially admitted in its petition that the electrical transformer was delivered and loaded onto the railcar and that at all times the transformer was the subject of the contract of deposit and carriage between NOPSI and the railroad; 2) actual completion of delivery is not required for a contract of carriage to be in effect and for the claim to come within the ambit of the Carmack Amendment because the Amendment applies to both “transportation or service.” 11707(a)(1) See: Margetson v. United Van Lines, Inc., 785 F.Supp. 917, 920 (D.N.M.1991); Swift Textiles, Inc. v. Watkins Motor Lines, Inc., 799 F.2d 697, 699 (11th Cir.1986), cert, denied, 480 U.S. 935, 107 S.Ct. 1577, 94 L.Ed.2d 768 (1987).
CSX Transportation argues that the Carmack Amendment applies whenever the Interstate Commerce Commission has jurisdiction over the shipment, as in this case, where the alleged accident occurred when the transformer was on CSX Transportation’s railcar and was intended for shipment across state lines. Swift Textiles, Inc., id. CSX Transportation cites Section 4(f) of the Uniform Freight Classification 12 which reads:
Property destined to or taken from a station, wharf, or landing at which there is no regularly appointed freight agent shall be entirely at risk of owner after unloaded from cars or vessels or loaded into cars or vessels, and, except in case of carrier’s negligence, when received from or delivered to such stations, wharves, or landings shall be at owner’s risk until the cars are attached to and after they are attached from locomotive or train or until loaded into and after unloaded from vessels.
Pursuant to this provision, the Carmack Amendment is applicable to freight that has not yet begun transit.
| cThe electrical transformer was the subject of a contract of carriage or bill of lading entitled “Uniform Freight Classification 12” issued September 18, 1975 and in effect between NOPSI and CSX Transportation at the time of the accident. Section 2(b) of the Uniform Freight Classification 12, providing for recovery for damage to cargo as a result of a carrier’s negligence, states:
As a condition precedent to recovery, claims must be filed in writing with the receiving or delivering carrier, or carrier issuing this bill of lading, or carrier on whose line the loss, damage, injury or delay occurred, within nine months after delivery of the property (or, in case of export traffic, within nine months after delivery at port of export) or, in case of failure to make delivery, then within nine months after a reasonable time for delivery has elapsed; and suits shall be instituted against any carrier only within two years and one day from the day when notice in writing is given by the carrier to the claimant that the carrier has disallowed the claim or any part or parts thereof specified in the notice. Where claims are not filed or suits are not instituted thereon in accordance with the foregoing procedures, no carrier hereunder shall be liable, and such claims will not be paid.

Emphasis added.

The transformer was delivered pursuant to the bill of lading to McGraw-Edison Power Systems Division at Cannonsburg, PA on January 27, 1976. The first written notice that CSX Transportation had of NOPSI’s claim for damages occurred when CSX *1037 Transportation was served with NOPSI’s petition on November 24, 1976, ten months and three days after delivery of the cargo.
Because NOPSI failed to file a written claim with CSX Transportation within nine months after delivery of the transformer, NOPSI’s suit is untimely. CSX Transportation’s Exception of Prescription is granted. Nevertheless, we discuss NOPSI’s other assignments of error in the interest of completeness.
By its second assignment of error NOPSI argues that the trial court abused its discretion in qualifying defendant’s witness Robert Purrington as an expert in this case. In its reasons for judgment the trial court wrote:
^Robert Purrington, tendered as an expert in physics and engineering, which the Court accepted to the extent and consistent with his education, training and experience, ...
NOPSI argues that the trial court erred in accepting Purrington as such because he is not licensed as an engineer and his background is exclusively in physics. This is a question of discretion. One must look to the facts to determine whether Purrington was allowed to testify outside of his expertise and whether the trial court relied on this testimony in its factual determinations in this case.
Purrington testified to the improper manner in which the transformer was loaded. He relied on principles of physics in arriving at his opinion. NOPSI sought to exclude Purrington’s testimony as it pertained to questions of engineering, soil sciences, geo-technical engineering, and accident reconstruction. The trial court may have relied in part on Purrington’s testimony in concluding that plaintiff failed to prove that there was a failure in the roadbed which was the proximate cause of the accident. Such was not in error since Purrington’s testimony pertained to the inappropriate loading method as the cause in fact of the accident. In so doing Purrington was testifying within an area of his expertise. This assignment lacks merit.
By its third assignment of error, NOPSI argues that the trial court’s judgment is manifestly erroneous and contrary to the weight of the evidence. NOPSI argues that the trial court erred in its judgment because the testimony of its expert supports a finding that the roadbed was substandard. Thus, the trial court should have rendered judgment in its favor on a theory of strict liability or negligence.
First, under a theory of strict liability or negligence a plaintiff must still prove causation: that the accident occurred as a result of the substandard |sroadbed. NOPSI failed to prove that the accident was the result of the substandard roadbed and not the loading method employed. Secondly, jurisprudence relative to the Carmack Amendment makes it clear that it is the shipper’s exclusive remedy for losses a shipper sustains when property is being transported within the jurisdiction of the Interstate Commerce Commission and has been issued a valid bill of lading. Hughes Aircraft Co. v. North American Van Lines, 970 F.2d 609 (9th Cir.1992). Because those criteria are met in this case NOPSI’s causes of action in negligence and strict liability are preempted.
The purpose behind the Carmack Amendment was to provide a uniform national remedy against carriers for breach of contract of carriage. A presumption of liability exists when property is delivered in good condition to a carrier and is subject to an Interstate Commerce Commission bill of lading. However, “delivery” does not equal custody. In this case the transformer was damaged while in the custody of AMM. The Carmack Amendment contemplates occasions when property is received or delivered by a carrier and there is no freight agent present. In those instances the presumption of liability against the carrier does not operate. The shipper must prove negligence. The trial court was not manifestly erroneous in finding that NOPSI failed to prove that the transformer was damaged by a defect in the roadbed. Nor was its judgment contrary to the weight of the evidence where there is ample evidence that the loading method employed by AMM could have caused the accident.
For the foregoing reasons the trial court’s judgment is affirmed. Because we affirm *1038 the trial court’s judgment dismissing NOPSI’s cause of action, we dismiss CSX Transportation’s third-party demand as moot. Costs of the appeal are assessed to appellant.

AFFIRMED.

| iSCHOTT, Chief Judge, concurs in the result.
After meticulously reviewing the conflicting testimony offered by the parties as to the cause of the accident the trial judge came to his conclusion:
This case is all about the proof necessary to support a finding that the roadbed was deficient. The evidence does not support that determination by a preponderance of the evidence under whatever theory of law the plaintiff has pleaded.
The record supports the trial court’s findings and demonstrates that the conclusion is not manifestly erroneous.
Particularly noteworthy is the fact that this generator was loaded on another railcar a few days later in the same place without any problem. Surely, if the soil condition was inadequate to support it once it would have been inadequate the next time also. This dramatically supports the trial court’s conclusion that faulty loading and not inadequate soil conditions caused the generator to fall off the car.